WEST et al., Appellants,

v.

HOWARD et al., Appellees.

[Cite as *West v. Howard* (1991), 77 Ohio App.3d 168.]

Court of Appeals of Ohio,
Lucas County.

No. L–90–290.

Decided Sept. 13, 1991.

*David C. Shook,* for appellants.

*Keith J. Watkins,* for appellees.

MELVIN L. RESNICK, Judge.

This is an appeal from a judgment of the Lucas County Court of Common Pleas wherein summary judgment was granted to defendants-appellees, John T. Howard and Joe Nowakowski. Plaintiffs-appellants, Cindy M. West and Carol West, appeal that judgment and ask this court to consider the following assignments of error:

"1. The trial court erred in granting Summary Judgment to the defendants without considering the testimony of the plaintiff as to the facts of the accident.

"2. The trial court erred in ruling that the plaintiff's hypnotically refreshed recollection regarding the facts of the accident was not admissible as evidence in opposition to defendants' Motion for Summary Judgment.

"3. The trial court erred in refusing to hold a pretrial hearing to determine the admissibility of plaintiff's hypnotically refreshed recollection, at required by *State v. Johnston* (1988), 39 Ohio St.3d 48, 529 N.E.2d 898.

"4. The trial court erred in refusing to hear testimony from plaintiff's psychotherapist before determining the admissibility of plaintiff's hypnotically refreshed recollection of the facts of the accident."

On May 19, 1986, Cindy West, then a minor, and John Howard were involved in an automobile accident at the intersection of Hill Avenue and Reynolds Road in Toledo, Lucas County, Ohio. At the time of the accident, Cindy West was driving westbound on Hill Avenue and attempted to turn left onto Reynolds Road. Howard was traveling east on Hill Avenue and collided with the West vehicle as Cindy was executing the left turn. The device controlling the flow of traffic on Hill Avenue at Reynolds Road includes directional arrows (green and yellow) which permit westbound vehicles to turn left onto Reynolds Road while the eastbound traffic remains stationary, *i.e.*, stopped pursuant to a red traffic signal. As a result of the accident, Cindy West was seriously injured.

On November 9, 1988, West and her mother, Carol West, instituted a personal injury action against Howard and Joe Nowakowski, the owner of the motor vehicle operated by Howard at the time of the accident. Appellants alleged Howard failed to stop for a red traffic light and entered the intersection at an unsafe speed. The complaint further asserted that Cindy West entered the intersection and executed a left turn on the directional green turn arrow. Appellant Cindy West requested $500,000 in damages from Howard and Nowakowski for, respectfully, Howard's negligence in the operation of the vehicle and Nowakowski's negligent entrustment in permitting Howard to operate the vehicle. Carol West's claim was for medical expenses incurred in the treatment of Cindy's injuries.

On October 27, 1989, appellees filed a motion for summary judgment based upon the fact that Cindy West could not remember whether she had a green arrow, green light or yellow arrow before she made her left turn. In an affidavit in support of the motion, Howard averred that the eastbound signal on Hill Avenue was green when he entered the intersection and green when the collision occurred.

Appellants filed a memorandum in opposition which relied upon the following testimony from Cindy West's deposition:

"A.  I remember leaving the house and getting in the car and driving down the road, coming to a complete stop, adjusting my radio, there were two cars ahead of me.  I sat there for a while, the two cars started going and I followed them right around the corner.

"And I can get about halfway through the intersection and I cannot remember anymore until—."

Appellants also provided the affidavit of the Acting Signal Engineer for the city of Toledo and a color sequence chart indicating that westbound traffic on Hill Avenue had a total of 27.6 seconds to execute a left turn onto Reynolds Road and that eastbound traffic on Hill Avenue could proceed through the intersection only after the lapse of this time period.

Based upon the evidence before it, the trial court found that there was a question of fact as to who entered the intersection on a green traffic signal. The lower court therefore denied the motion for summary judgment.

On April 4, 1990, appellees filed a motion *in limine* which requested that the court issue an order precluding "any testimony from plaintiff [Cindy West] or any other source with reference to a hypnotic or trance induced recollection of the events leading up to the accident in this case."  Appellees alleged that Cindy West had no memory of the events leading up to the accident or of the accident itself prior to therapy which included "enhanced recollection" by means of hypnosis.  The motion was supported by an article on the reliability of hypnosis in enhancing memory.  Appellants responded with a memorandum in opposition which asserted that Cindy West's refreshed recollection was consistent with the physical evidence and that the testimony was admissible because the means by which Cindy's memory was refreshed comported with the standards set forth in *State v. Johnston* (1988), 39 Ohio St.3d 48, 529 N.E.2d 898.  Appellants supported their memorandum with a transcript containing part of the deposition testimony of Lois Sumser, a social worker trained in trance techniques.  Sumser's progress notes detailing Cindy West's memory retrieval as it related to the accident were also offered in support of the memorandum in opposition.  These notes and Sumser's deposition testimony reveal that Sumser treated Cindy West for an eating disorder, anorexia, and in the course of that treatment employed a hypnotic technique frequently called "self-hypnosis" to aid Cindy in remembering the details of the accident so that Cindy could deal with the emotions arising from that incident.

On May 30, 1990, a hearing was held on the motion *in limine*.  The transcript of that hearing indicates that "extensive" in-chamber discussions

were held by the trial court and counsel for the parties of this case. In the hearing itself, the court below held that *Johnston, supra,* was the controlling law on the issue of the admissibility of Cindy West's refreshed recollection of the accident. Appellants argued that, per *Johnston* the court was required to hold an evidentiary hearing. The court declined to do so. However, the court below then proceeded to address each guideline suggested in *Johnston* and permitted the parties to argue their view as to compliance with each guideline. Facts derived from depositions and materials supporting various motions were used in those arguments.

On June 7, 1990, the trial court granted the motion *in limine* and ordered that any "hypnotically refreshed recollection of the events leading to the accident cannot be used or admitted into evidence in the trial of this cause." In addition, appellees were granted leave to amend and refile their motion for summary judgment. On July 9, 1990, appellees filed said motion. In their memorandum in opposition appellants conceded that without Cindy's self-hypnotically refreshed testimony, appellants had "no proof as to how the accident occurred, and therefore no proof on the issue of liability." Appellants founded their memorandum in opposition on the grant of the motion *in limine* and asked the court to change its ruling in this regard. Absent a reconsideration of the ruling, appellants further conceded that appellees were entitled to summary judgment.

On August 15, 1990, the lower court granted appellees' motion for summary judgment. The court held that, in construing the *admissible* evidence in a light most favorable to appellants, reasonable minds could only conclude adversely to appellants.

Although appellants set forth four assignments of error, all four are directed at the grant of summary judgment based upon the inadmissibility of facts established through self-hypnotically refreshed recollection. Therefore, all four shall be considered together.

Summary judgment can be granted to the moving party only in instances where that party has demonstrated that no genuine issue of material fact exists. Civ.R. 56(C); *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 66, 8 O.O.3d 73, 74, 375 N.E.2d 46, 47. However, where the moving party has offered evidentiary materials, the nonmoving party has the duty to respond with evidentiary materials demonstrating that a genuine issue of material fact does exist. *Savransky v. Cleveland* (1983), 4 Ohio St.3d 118, 4 OBR 364, 447 N.E.2d 98. In making its decision, the trial court must construe the evidence most strongly in favor of the nonmoving party. Civ.R. 56(C). Only where it appears from such evidence that reasonable minds could reach but one conclusion and that conclusion is adverse to the nonmoving party can

summary judgment be granted as a matter of law. *Harless, supra,* 54 Ohio St.2d at 66, 8 O.O.3d at 74, 375 N.E.2d at 47.

■ Essentially, appellants contend that Cindy's self-hypnotically refreshed testimony creates a question of fact as to the cause of the accident, *i.e.,* whether Howard's negligent conduct caused the accident and Cindy West's resulting injury. Appellants therefore maintain that the trial court erred by holding that Cindy's self-hypnotically refreshed recollections were not admissible as evidence in opposition to the motion for summary judgment. As a corollary to this argument, appellants further contend that the court below erred in refusing to hold a pretrial evidentiary hearing, which would include testimony from Sumser, before determining the admissibility of evidence derived from the self-hypnotically refreshed recollections.

The use of hypnosis to retrieve information forgotten by a patient is a recognized therapeutic tool in the field of medicine. *Johnston, supra,* 39 Ohio St.3d at 50, 529 N.E.2d at 902. See, generally, Tarantino, Strategic Use of Scientific Evidence (1989) 148, Section 5.01. Nonetheless, the reliability of the retrieved information is uncertain because hypnosis can produce inaccurate memories. *Johnston, supra.* Three characteristics of hypnosis may lead to the inaccurate memories. These are: (1) the subject becomes suggestible and may provide answers which will meet with the approval of the therapist; (2) the subject is likely to "confabulate", that is, use his or her imagination to fill in details in order to make the "memory" cohesive and complete; and (3) the subject experiences "memory hardening" which provides him or her with great confidence in both true and false memories. (Citation omitted.) *Id.*

■ Because of the danger of inaccurate memory produced by the use of hypnosis, the Supreme Court of Ohio held, in *Johnston, supra,* at paragraph three of the syllabus:

"Testimony supplied by a witness whose memory has been refreshed by hypnosis prior to trial is admissible only if the trial court determines that, under the totality of the circumstances, the proposed testimony is sufficiently reliable to merit admission."

The party offering the hypnotically refreshed testimony has the burden of showing, by clear and convincing evidence, that such testimony is reliable. *Id.* at 56, 529 N.E.2d at 907. The *Johnston* court emphasized that each case is unique and that, therefore, the determination of the admissibility of hypnotically refreshed testimony must be accomplished on a case-by-case basis. *Id.* at 54, 529 N.E.2d at 906. Nevertheless, the court also set forth several guidelines or factors which a trial court may consider under the totality of the circumstances test. These include:

"(a) The hypnosis session should be conducted by a licensed psychiatrist or psychologist trained in the use of hypnosis, to ensure the most accurate recall possible.

"(b) The qualified professional conducting the hypnosis session should be independent from any of the parties in the case, to avoid any biased procedures or questions.

"(c) Any information given to the hypnotist by any of the parties to the case prior to the hypnosis session should be recorded, at a minimum in writing, so that the trial court can determine the extent to which the subject may have received any information from the hypnotist.

"(d) Before the hypnosis session, the hypnotist should obtain a description of the facts from the subject, avoiding adding new elements to the subject's description, so that the trial court can compare the subject's pre- and post-hypnotic recollection.

"(e) The hypnosis session and all other contact between the hypnotist and the subject should be recorded, preferably on video tape, so that a permanent record is available to reveal the presence of any suggestive procedures or questions.

"(f) Generally, only the hypnotist and the subject should be present during the hypnosis session, in order to protect against inadvertent influence. However, other persons may be present if their attendance is necessary and steps are taken to prevent their influencing the results of the session." *Id.* at 55, 529 N.E.2d at 906.

The court may also consider other factors which could affect the reliability of the proffered testimony such as "conflicting or corroborating evidence independent of the proposed testimony, the appropriateness of using hypnosis to restore the subject's memory, and any discernible motivation the subject might have for remembering or forgetting the events in question." *Id.*

■ Initially, we address the necessity of a pretrial hearing on the issue of admissibility. While the *Johnston* court cautioned that a hearing should be held, it did not specify that the trial court hear testimony relevant to the guidelines. The purpose of the hearing is to determine the admissibility of evidence outside the presence of a jury. Evid.R. 104(C). Such a determination is, in the first instance, a matter for the trial court, which has broad discretion in determining admissibility and may consider any and all evidence before it to reach said determination. Evid.R. 104(A). Therefore, we are of the opinion that in many cases the facts brought to light during the discovery process will permit a trial court to ascertain, under the totality of the circumstances, the reliability of the proffered testimony. In such cases, a

trial court may determine admissibility without requiring that further evidence be offered at the pretrial hearing. Accordingly, only where the court abuses its discretion in failing to hear further evidence can its judgment as to admissibility be reversed. *State v. Maurer* (1984), 15 Ohio St.3d 239, 265, 15 OBR 379, 401, 473 N.E.2d 768, 791. (Citations omitted.)

In this case, the trial court did hold a pretrial hearing in which it considered deposition testimony, interrogatories, affidavits and other materials presented by the parties in support of or in opposition to the motion *in limine*. It is evident from these materials that, prior to the self-hypnosis therapy, Cindy had *no* memory of the day of the accident, the events leading to the accident, or the accident itself.[1] Despite the fact that the technique employed to retrieve Cindy's memory of the accident is termed "self-hypnosis," Sumser's deposition testimony and progress notes disclose that the therapist was fully involved in the retrieval process and that there was considerable interaction between Cindy and Sumser. Furthermore, the evidence shows that Cindy was strongly motivated to "remember" the accident in order to relieve her emotional feelings with regard to that accident and overcome her eating disorder.

Although self-hypnosis was not used for the specific purpose of litigation, Sumser was not independent of the parties. On the contrary, Sumser initiated the use of the self-hypnosis technique for the sole purpose of bettering Cindy's emotional health. Thus, the accuracies of the memories retrieved through the process were not of utmost importance to Sumser. Instead, the feelings released by the recollections were the goal of the therapy. Under these circumstances, Sumser cannot be deemed to be independent or objective, and the dangers associated with the use of a hypnotic technique; *i.e.,*

---

1. Sumser's progress notes reveal that the testimony provided by Cindy in her deposition was recalled only after the hypnosis technique was employed. A portion of these notes, dated March 12, 1987 and March 19, 1987, are as follows:

   "C. [Cindy] came in today for our scheduled appt. and said that she had been using the relaxation technique during the week and that it helped her relax; go to sleep.

   "She easily relaxed during this session; we began dealing w/the day of the accident. She discovered what she was wearing; why she was going out in the car (to meet a friend at the movie theatre). She remembered putting on make-up, looking in her mirror. She recalled that it was raining and that she had the radio on. She remembered the song playing, and that she was feeling happy. This was about all we discovered during this session, but C. said she felt very relaxed & refreshed when she was finished w/the deep relaxation.
   " * * *

   "This session was quite fruitful. C. went easily into a light trance. She went back to her bedroom, getting ready to go out. She worked her way to the intersection and remembered a blue; green car in front of her. They all came to a stop and the blue; green car moved ahead. She cannot seem to go much further, but then remembered the flashing lights of the ambulance and the siren. She began to cry as I talked to her about the young girl (herself) inside the car—hurt and scared. * * * "

suggestibility, confabulation, and memory hardening are more likely to be present.

Moreover, Cindy's proposed testimony is not corroborated by any independent evidence in the record.

■ Finally, this court is of the opinion that a hypnotic technique, such as the one used in the case before us, in which the patient or client herself controls the memory retrieval process could never meet the standard for reliability set forth in *Johnston, supra*. The guidelines and factors enunciated by the *Johnston* court require that the hypnosis session be conducted by a neutral qualified health professional and that the process of retrieval be documented so that it can be reviewed by the court for the dangers inherent in that process. The technique of self-hypnosis, as employed in this case, involves none of these safeguards and, because it is a learned technique, is subject to all of the dangers associated with hypnotic therapy. See *People v. Schreiner* (1991), 77 N.Y.2d 733, 570 N.Y.S.2d 464, 573 N.E.2d 552. That is, the suggestiveness involved in learning the technique and Cindy's motivation for retrieving the memory render any subsequent memories refreshed through self-hypnosis inherently unreliable.

For the foregoing reasons, we conclude that the trial court did not abuse its discretion in failing to hear testimony from Sumser. The record of the case at bar contains sufficient evidence to demonstrate appellants could not and did not prove, by clear and convincing evidence, under the totality of the circumstances, that Cindy West's testimony as refreshed by means of self-hypnosis was reliable. Accordingly, the facts offered by appellees were uncontroverted and establish that Howard did not operate his motor vehicle in a negligent manner and thereby cause the accident. There being no genuine issue as to Howard's negligence, the trial court did not err in granting summary judgment as a matter of law. Appellants' first, second, third and fourth assignments of error are found not well taken.

On consideration whereof, this court finds that substantial justice was done the parties complaining, and the judgment of the Lucas County Court of Common Pleas is affirmed.

*Judgment affirmed.*

HANDWORK, P.J., and GLASSER, J., concur.